DETERMINED IN THE

# SECOND DEPARTMENT,

AT

# GENERAL TERM.

## September, 1882.

---

THE PEOPLE OF THE STATE OF NEW YORK EX REL.
JOHN D. NEGUS, RESPONDENT, v. WILLIAM DWYER,
APPELLANT.*

*Aldermen — when they act as officers of the city in exercising a special statutory power conferred upon the mayor and common council — Laws 1874, chap. 585 — When the Supreme Court may punish a violation of an injunction order granted by a county judge.*

The legislature, by chapter 585 of 1874, created and provided for the construction of an elevated railroad on designated streets in the city of Brooklyn, "or on such streets and avenues as may be named by the mayor and common council of the city of Brooklyn as being more suitable for carrying out the objects contemplated in the erection of said elevated railway.". On December 6, 1881, at a regular meeting of the common council, a resolution was adopted naming certain streets and avenues upon which the railway might be constructed. The resolution was sent to the mayor,. who vetoed it and returned it to the common council on December seventeenth. Upon that day the relator commenced an action, in the Supreme Court, against the city, the Elevated Railway and its receivers, to restrain the common council from passing the resolution over the mayor's veto; and a preliminary injunction was obtained and served, with the other necessary papers, upon the mayor and each of the aldermen of the city. Thereafter, and while this injunction was still in force, seventeen of the aldermen, at a meeting of the common council, voted in favor of the resolution and passed it over the veto.

---

* Decided May, 1882, together with sixteen other similar cases.

*Held,* that in so doing they were acting not as agents of the State, but as the officers and servants of the city.

That they were bound by the injunction granted in the action brought against the city.

That the fact that the order granting the preliminary injunction was made by the county judge did not prevent the Supreme Court from punishing the aldermen for a contempt in violating it.

APPEAL from an order made at a Special Term adjudging the appellant guilty of misconduct and contempt in violating an injunction, and ordering him to be imprisoned in the county jail for thirty days and to pay a fine of $250.

The Brooklyn Elevated Railway Company was chartered by chapter 585 of 1874 for the purpose of constructing and operating an elevated railroad from the Brooklyn end of the East river bridge to Woodhaven, in Queens county. The charter designated the route through certain streets and avenues of the city of Brooklyn where the road should be built, being a single line of road, and at the end of the description added " or on such streets and avenues as may be named by the mayor and common council of the city of Brooklyn as being more suitable for carrying out the objects contemplated in the erection of said elevated railway."

On the 6th day of December, 1881, on application of the company, the common council adopted a resolution naming other streets and avenues as being more suitable for the carrying out of the objects contemplated.

On the adoption of the said resolution the same was, on the seventh of December, sent to the mayor for his approval, but the mayor returned the same on the seventeenth of December to the common council disapproved by him with a message stating the grounds of his disapproval. Thereupon the relator claiming that the common council intended and threatened, in virtue of their authority as the legislative power in the city and in pursuance of the city charter, to pass the said resolution over the mayor's objections, commenced an action against the city of Brooklyn, the Brooklyn Elevated Railway Company and its receivers to restrain them, among other things, from passing the resolution or from acting thereunder.

At the commencement of the action an order was obtained from

the county judge of Kings county requiring the defendants to show cause on the 28th of December, 1881, at a Special Term of the Supreme Court, why such injunction should not be granted, and until the hearing and decision of said motion enjoining the city of Brooklyn and the common council, and each and every member thereof, from voting, acting upon, or considering in any form or manner, or passing, any resolution, altering or changing the route of the Brooklyn Elevated Railway from that designated in the charter, or from voting or doing any act to override the veto or disapproval by the mayor of the resolution aforesaid.

The summons, complaint and injunction order were served on the mayor and each individual alderman on the 27th of December, 1881.

The motion to continue the injunction was argued on the 28th of December, 1881, the aldermen appearing by counsel and the decision being reserved.

After service of the injunction on the twenty-seventh the board of aldermen, being the common council, adjourned from day to day until the thirty-first of December, on which day they met and after some delay they took the resolution in question from the table, and under the previous question passed and adopted the same notwithstanding the objection of the mayor. The defendants in these proceedings, seventeen in number, voting in the affirmative. They were attached for contempt in willfully disobeying the order of injunction, and severally adjudged to be in contempt as charged and ordered to be punished by fine and imprisonment.

*Herbert G. Hull*, for the relator.

*Winchester Britton*, for the appellant.

DYKMAN, J.:

This procedure is instituted for the punishment of the defendant and others for a criminal contempt manifested by disobedience to an injunction order.

The questions for determination came in this wise : A charter was made by the legislature of the State for the construction of an elevated railway on designated streets in the city of Brooklyn, or

on such streets and avenues as should be named by the mayor and common council of the city of Brooklyn, as being more suitable for carrying out the objects contemplated in the erection of the railway.

On the 6th day of December, 1881, in regular session, the aldermen made and adopted a resolution marking out and naming certain streets and avenues on which the superstructure might be placed. Such resolution was, in the orderly course of municipal procedure, forwarded to the mayor of the city for approval, and returned by him with his disapprobation accompanied by a veto message.

Thereupon an action was commenced in the Supreme Court against the city of Brooklyn and the Brooklyn Elevated Railway Company, with the purpose of restraining the common council from any action to override the veto of the mayor. In this action a preliminary injunction was obtained from the county judge of Kings county enjoining the common council and its members from voting or doing any act to override or disapprove the mayor's veto. The papers in the action with this injunction order were served on the mayor and each of the aldermen of the city on the 27th day of December, 1881. On the 31st day of December, 1881, the common council voted on the resolution and passed it notwithstanding the veto and the injunction. The defendant and sixteen other aldermen voted in favor of the resolution and were all attached for contempt therefor. The contempt was found against them and punishment was imposed, and from that judgment we have this appeal.

It is attempted to excuse the conduct of the defendant and his companions in defiance of the injunction order by the theory that the delegation of power by the legislature to the mayor and common council constituted them agents of the State, and not of the city. That the acts of the appellants were neither municipal nor aldermanic; and as they were not made parties to the injunction suit they cannot be affected by orders made therein.

There would be force in this claim if the city had no interest in the performance of the duties imposed on the common council, and could derive no benefit from right action of that body, and no injury from misfeasance, and no connection existed between the powers so bestowed and their duties as agents of the city.

But it is not so. The power is laid on the common council, a body composed of the aldermen of the city, and invested with the legislative power of the corporation, so that the depository of the power is the legislative body of the city of Brooklyn, and it has no other function. The powe· conferred on the common council is granted to the corporation. The exercise of its office under this law is in direct alignment with its duties as an agent of the corporation. Nay, more, the public have a direct interest in the exercise of the functions imparted to this body, as they have relation to the public streets of the city. The city will have corporate injury or benefit as the duties are performed ill or well. The duties relate to the exercise of corporate power possessed over the public streets.

These considerations give clear indication that the appellants, under the law alluded to, acted as the servants and agents of the corporation, and that the maxim *res; ondeat superior* would have application between them.

Besides all this, the veto of the mayor could be nullified and superseded only by the board of aldermen. State agents with power to locate a railway have no such prerogative. The charter of the city is that if the mayor return an ordinance with objections, the board shall proceed to reconsider the same, and if two-thirds of all the members elected shall then agree to pass the same, it shall take effect as a law. Here, then, the act is one which only aldermen in board assembled could perform, and precisely that was forbidden by the injunction order.

It follows, therefore, that the aldermen cannot obtain exculpation on this plea. As they acted as aldermen, they are amenable to an injunction order in an action against the city.

Another objection is that the injunction order was not the lawful mandate of the court, because it was signed by a county judge. The Code is that an injunction order may be granted by the court in which the action is brought, or by a judge thereof or by a county judge; and where it is granted by a judge it may be enforced as the order of the court. The county judge had power, therefore, to sit in judgment on the facts presented to him; and the complaint, which is verified, and the affidavits accompanying the same, brought to him a case justifying the interposition of the

court in restraint of the anticipated action of the aldermen. This gave him jurisdiction, and his determination was not void, even though on appeal it might have been held improvident or irregular. As it stood unreversed it was a lawful mandate.

On the merits there is no defense. The restraining order, with all the papers on which it was founded, was served personally on the aldermen, and they proceeded to its violation with deliberate intent. The act of disobedience is without a circumstance of palliation. They well knew the action interdicted by the order, and yet they performed it in disregard of the command, without any claim at that time of illegality or invalidity. The contempt seems to have been perpetrated with head-strong intention and premeditated design. We find no avenue of escape for the appellants. The process of the court must be vindicated; and for that purpose the punishment awarded is neither inordinate nor disproportionate, and no part of it should be interscinded.

The order should be affirmed, with costs and disbursements.

CULLEN, J.:

I concur in the affirmance of the orders appealed from on the ground that the appellants assumed to act with reference to the subject-matter of the injunction in the capacity of corporate agents. The act, for the commission of which they are punished, had all the form and characteristics of a corporate act. I do not think that the appellants are relieved from contempt, even if it be held that they erred in their conception of the duty imposed upon them by the legislature in regard to this railroad.

It is conceded that the injunction forbade their action as city agents in regard to the application. If thereafter they did attempt to act as city agents it is no answer to the charge of contempt to say that the appellants, to have given legal effect to their action, should have acted in a different capacity, and that in such capacity the injunction would not have bound them.

The question is not how they might have acted, but in what capacity they did act. Therefore the test is, was the act of the appellants in such form and manner that had a corporate act been necessary to give effect to their resolution their action would have been valid. Undoubtedly it was such.

Judged by this test I think the defendants violated the injunction.

Present — BARNARD, P. J., DYKMAN and CULLEN, JJ.

Order convicting Dwyer of contempt affirmed, with costs and disbursements.